No. 14-704C
(Judge Williams)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

ALEXANDER ALIMANESTIANU, *et al.,*

Plaintiffs,

v.

UNITED STATES,

Defendant.

---

**PLAINTIFFS' SUPPLEMENTAL BRIEFING ADDRESSING THE DECISION IN**
*AVIATION & GENERAL INSURANCE V. UNITED STATES*, **NO. 14-687C**

---

BECKER, GLYNN, MUFFLY,
CHASSIN & HOSINSKI LLP

Zeb Landsman, Esq. (Attorney of Record)
Richard N. Chassin, Esq.
Jesse T. Conan, Esq.
299 Park Avenue
New York, New York 10171
zlandsman@beckerglynn.com
rchassin@beckerglynn.com
jconan@beckerglynn.com
Tel: (212) 888-3033
Fax: (212) 888-0255

July 30, 2015                    Attorneys for the Plaintiffs

# TABLE OF CONTENTS

                                                 **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

    I.      THE PROPERTY INTERESTS: TORT CLAIMS ................................................ 1

    II.     CONTROLLING FEDERAL CIRCUIT CASELAW PROVIDES THAT A CLAIM IS A COGNIZABLE PROPERTY INTEREST UNDER THE FIFTH AMENDMENT ............................................................................................ 3

    III.    CLAIMS ARE NOT ALL CREATED EQUAL ..................................................... 6

    IV.    JUSTICIABILITY: THERE IS NO BASIS TO DISTINGUISH BETWEEN CLAIMS REFERRED TO THE COMMISSION AND CLAIMS THAT WERE NOT .................................. 9

    V.     BECAUSE THE UNITED STATES SEIZED AND COMPROMISED THE CLAIMS OF THE ALIMANESTIANU PLAINTIFFS, THE PENN CENTRAL FACTORS ARE IRRELEVANT; THE GOVERNMENT HAS A CATEGORICAL DUTY TO PAY JUST COMPENSATION ........................................................................... 11

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                               **Page**

*Abraham-Youri v. United States*,
    139 F.3d 1462 (Fed. Cir. 1997) .................................................................. 3, 4, 8, 10

*Adams v. United States*,
    391 F.3d 1212 (Fed. Cir. 2004) ............................................................................ 6, 7, 12

*Alliance of Descendants of Tex. Land Grants v. United States,*
    37 F.3d 1478 (Fed. Cir. 1994) ................................................................................. 3, 4, 8

*Aviation & Gen. Ins. Co. v. United States,*
    121 Fed. Cl. 357 (Fed. Cl. 2015) ................................................................................ passim

*Belk v. United States*,
    858 F.2d 706 (Fed. Cir. 1988) ............................................................................................ 9

*Horne v. Dep't of Agric.*,
    __ U.S. ___, 135 S. Ct. 2419 (2015) ........................................................................ 11, 12, 13

*Langenegger v. United States*,
    756 F.2d 1565 (Fed. Cir. 1985) ........................................................................................ 10

*LMWT Realty Corp. v. Davis Agency, Inc.*,
    85 N.Y.2d 462, 626 N.Y.S.2d 39 (N.Y. 1995) ................................................................... 6

*Rogers v. Tristar Prods., Inc.*,
    559 Fed. App'x 1042 (Fed. Cir. 2012) ............................................................................ 7, 8

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ............................................................................................................ 5

*Shanghai Power Co. v. United States*,
    4 Cl. Ct. 237 (1983), *aff'd*, 765 F.2d 159 (Fed. Cir. 1985) ............................................. 5, 9

*Stauffer v. Brooks Bros. Grp.*,
    758 F.3d 1314 (Fed. Cir. 2014) .......................................................................................... 7

*United States v. Hubbell*,
    323 F.2d 197 (5th Cir. 1963) .............................................................................................. 6

*In re Estate of Walton*,
    20 A.D.2d 386, 247 N.Y.S.2d 21 (N.Y. 1st Dep't 1964) .................................................... 5

*Wischan v. Adler (In re Wischan)*,
 77 F.3d 875 (5th Cir. 1996) ............................................................................................. 6

**Statutes**

11 U.S.C. § 323(a) ............................................................................................................... 6

11 U.S.C. § 541(a) ............................................................................................................... 6

N.Y. Gen. Oblig. § 13-103 (McKinney 2015) .................................................................... 5

**Executive Orders**

Exec. Order No. 13477, 7 Fed. Reg. 65965 (Oct. 31, 2008) ............................................... 2

# INTRODUCTION[1]

A threshold issue in this case is whether a tort claim (or a judgment) is a cognizable property interest under the Takings Clause of the Fifth Amendment. *Prin. Opp.* at 11-19. A recent decision in the U.S. Court of Claims—*Aviation & Gen. Ins. Co. v. United States*, 121 Fed. Cl. 357 (Fed. Cl. 2015) ("*Aviation*")—confirms that it is.

Like this case, *Aviation* arises out of the Libyan Claims Settlement Agreement ("CSA"). And as here, claims held by the *Aviation* plaintiffs were affected when the U.S. entered the CSA and restored Libya's sovereign immunity. The U.S. unsuccessfully moved to dismiss in *Aviation* on the same grounds as here, arguing that claims are not cognizable property under the Fifth Amendment. Judge Wheeler denied the motion, holding that the affected claims against Libya— tort claims for the destruction of an aircraft and tort claims for personal injury—constituted cognizable property under the Takings Clause. The same result is compelled here.

## I. THE PROPERTY INTERESTS: TORT CLAIMS

The plaintiffs in *Aviation*, three insurance companies, held subrogated tort claims against Libya for two acts of state-sponsored terror: the hijacking and destruction of EgyptAir Flight 648 and the Pan Am Flight 103 Lockerbie bombing. The claims sought indemnification for insurance payments made in connection with damage to the hull of EgyptAir Flight 648 and to the victims of Pan Am Flight 103. As a preliminary matter, Judge Wheeler honed in on the relevant property interest, "causes of action against Libya." *Id.* at 362. Later in the opinion, Judge Wheeler expanded upon that interest: "[a]s holders of subrogated insurance contracts, Plaintiffs were entitled to sue and recover on behalf of the direct victims of terrorism here, and were entitled to all the rights and remedies belonging to the insured against a third party with

---

[1] References to the "*Prin. Opp.*" refers to the initial memorandum of law of the Alimanestianu plaintiffs, dated January 22, 2015 (Doc. 13).

respect to any loss covered by the policy." *Id.* at 365. Thus, the core property in *Aviation* is functionally identical to the property here, tort claims asserted by victims of Libyan terror.

There are two small differences. First, the claims of the Alimanestianu plaintiffs had been elevated to a final judgment for a specific dollar amount. And second, the subrogated tort claims at issue in *Aviation* concerned indemnification for liability payments (Lockerbie), personal injury (Lockerbie), and property damage (EgyptAir), while the claims of the Alimanestianu plaintiffs are solely for personal injury. There is no plausible basis, however, under Federal Circuit precedent or the Fifth Amendment (discussed in Sections II and III, below) to distinguish between claims arising out of damage to property and claims arising out of personal injury. Both seek the same thing, monetary damages to make the victim whole for a legal loss. And critically, although Judge Wheeler's analysis does not expressly discuss the plaintiffs' liability payments for personal injury claims, his ruling does not treat them differently, because he denies the motion to dismiss in its entirety.

Like the Alimanestianu plaintiffs, the *Aviation* plaintiffs filed their tort claims against Libya in the U.S. District Court for the District of Columbia. While those lawsuits were pending, the U.S. entered the CSA with Libya. The CSA espoused (seized and compromised) the claims of all U.S. nationals against Libya (such as those held by the Alimanestianu plaintiffs). Further, as a consequence of the Libyan Claims Resolution Act, the CSA, and Executive Order 13477, Libya's sovereign immunity was restored.

The *Aviation* plaintiffs principally asserted claims of foreign nationals against Libya. The U.S. could not espouse those claims because it does not have the power to seize claims of foreign entities against other foreign entities. The restoration of Libya's sovereign immunity, however, precluded their litigation in the U.S. *See, e.g.,* Exec. Order No. 13477, 7 Fed. Reg.

2

65965 (Oct. 31, 2008) at §1(b)(iii) ("[n]either the dismissal of the lawsuit, nor anything in this order, shall affect the ability of any foreign national to pursue other available remedies for claims coming within the terms of Article I in foreign courts or through the efforts of foreign governments"). In contrast, the United States espoused (seized and then settled) the claims of the Alimanestianu plaintiffs, precluding their litigation anywhere. *See, e.g.,* CSA, Art. 3(1) ("[e]ach Party shall accept the resources for distribution as a full and final settlement of its claims and suits and those of its nationals").

Thus, though the nature of the government invasion is dramatically different (outright seizure, transfer, and compromise in the case of the Alimanestianu plaintiffs vs. mere elimination of a U.S. forum in the case of the non-U.S. claims at issue in *Aviation*), the underlying affected property interest is the same: tort claims.

## II. CONTROLLING FEDERAL CIRCUIT CASELAW PROVIDES THAT A CLAIM IS A COGNIZABLE PROPERTY INTEREST UNDER THE FIFTH AMENDMENT

Judge Wheeler focused on two controlling Federal Circuit cases: *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478 (Fed. Cir. 1994) ("*Alliance of Descendants*") and *Abraham-Youri v. United States*, 139 F.3d 1462 (Fed. Cir. 1997) ("*Abraham-Youri*").[2] Each holds, without limitation, that a claim is a cognizable property interest under the Takings Clause of the Fifth Amendment.

*Alliance of Descendants* concerns agreements between the U.S. and Mexico. The plaintiffs were the heirs of Mexican nationals who had owned land in what is now Texas. Texas seized that land during the hostilities that followed its declaration of independence from Mexico in 1836. In 1923, the U.S. and Mexico created a commission to resolve the claims of Mexicans

---

[2] *Alliance of Descendants* is cited in our *Prin. Opp.* at 11 and *Abraham-Youri* is cited at 19, 24-27.

3

to the land seized by Texas and the claims of Texans to land seized by Mexico. In 1941, the U.S. and Mexico entered into an agreement releasing each other from liability for the claims pending before the commission, thus settling the claims of each country's nationals against the other. Each country was expected to pay remuneration to its own citizens. The U.S. paid compensation to its own citizens but Mexico did not; the Mexicans sued the U.S., alleging a taking.

The Federal Circuit succinctly honed in on the property at issue—legal claims, not real property: "[t]he claimants do not in this suit allege a taking of the land in Texas itself. Rather they allege that the United States took away their legal right to sue for compensation for that land." *Id.* at 1481. The Federal Circuit went on to hold, without any limiting language, that a legal claim is property under the takings clause: "***because a legal cause of action is property within the meaning of the Fifth Amendment, claimants have properly alleged possession of a compensable property interest***." *Id.* (citations omitted and emphasis added). Judge Wheeler concluded, as should this Court, that the holding is "controlling." *Aviation* at 363.

*Abrahim-Youri*, discussed at length in our *Prin. Opp.* (at 24-27), is the other controlling Federal Circuit decision cited by Judge Wheeler. Judge Wheeler found that "for purposes of determining a cognizable property interest, the Federal Circuit maintained its earlier position from *Alliance of Descendants* that causes of action against a foreign sovereign are property interests under the Fifth Amendment." *Aviation* at 363.

Thus, the two Federal Circuit panels to consider cases arising under the narrow fact pattern before the Court here hold that a claim is a cognizable property interest under the Takings Clause. Those two decisions compelled Judge Wheeler to find that the affected claims of the *Aviation* plaintiffs were cognizable interests under the Takings Clause. *Alliance of Descendants and Abrahim-Youri* compel the same result here.

4

* * *

Though not controlling, Judge Wheeler found Judge Kozinski's decision in *Shanghai Power Co. v. United States*, 4 Cl. Ct. 237 (1983), *aff'd*, 765 F.2d 159 (Fed. Cir. 1985), instructive on whether a claim is a protected property interest. Judge Kozinski observed that the federal courts construe cognizable property interests broadly and concluded that "a plaintiff's interest will be recognized as property for purposes of the Fifth Amendment unless that interest is devoid of a legally enforceable right or recognition of a property interest would contravene public policy." *Id.* at 240. Judge Konzinski went on to find that a claim against a foreign government is cognizable. *Id.* at 241.

The property at issue here—tort claims reduced to judgment—is plainly not "devoid of a legally enforceable right." Further, when the U.S. used those claims as a bargaining chip, the government obtained their proceeds. Though perhaps counter intuitive, the term *property*, as used in the Takings Clause, does not mean the actual physical or intangible object; rather, *property* denotes the cluster of rights that attaches to such an object, specifically, "the right to possess, use and dispose of it." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003-4 (1984) (trade secrets may be protected under the Takings Clause). Thus, where intangible property can be possessed, used, and disposed (much like tangible or real property), it is protected by the Takings Cause.

The property at issue here—judgments, tort claims, and the proceeds of tort claims— possess such characteristics. Claims and judgments can plainly be possessed, used, disposed, compromised, settled, and prosecuted. *See, e.g.,* N.Y. Gen. Oblig. § 13-103 (McKinney 2015) ("a judgment for a sum of money, or directing the payment of a sum of money, recovered upon any cause of action, may be transferred"); *In re Estate of Walton*, 20 A.D.2d 386, 390, 247

N.Y.S.2d 21, 25-26 (N.Y. 1st Dep't 1964) (an unliquidated personal injury claim is a property right against which a federal tax lien may be asserted); *LMWT Realty Corp. v. Davis Agency, Inc.*, 85 N.Y.2d 462, 467, 626 N.Y.S.2d 39, 42 (N.Y. 1995) ("because a cause of action is a species of property, an attorney acquires a vested property interest in the cause of action at the signing of the retainer agreement and thus a title to property and rights to property") (quotations omitted); *United States v. Hubbell*, 323 F.2d 197, 200 (5th Cir. 1963) (no distinction between tort and contract claims in connection with federal tax liens: "[w]e see no reason, however, why a [personal injury] tort claim is not property or rights to property, just as, e.g., any unliquidated contract claim"); 11 U.S.C. §§ 323(a), 541 (a); *Wischan v. Adler (In re Wischan)*, 77 F.3d 875, 877-78 (5th Cir. 1996) (both claims and judgments pass to a trustee in bankruptcy).[3]

Thus, even if there were no controlling Federal Circuit authority (and there is), the characteristics of a tort claim, judgment, and the proceeds of a claim, compel protection under the Takings Clause.

### III. CLAIMS ARE NOT ALL CREATED EQUAL

A point of law that emerges from Judge Wheeler's decision is that not all claims are created equal. Relying principally on *Adams v. United States*, 391 F.3d 1212 (Fed. Cir. 2004), the government mistakenly argued in *Aviation,* as it has here, that under Federal Circuit precedent a tort claim can never be property under the takings clause. Judge Wheeler found that to be a gross overstatement of *Adams*, which had nothing to do with tort claims. At most, *Adams* held that a claim is not a cognizable property interest if that claim is attempting to enforce an underlying entitlement that itself is not a cognizable property interest.

---

[3] New York law is cited as most of the Alimanestianu plaintiffs were domiciled in New York and the underlying tort claims were principally brought under New York law.

The primary property interest in *Adams* was a statutory entitlement to overtime compensation under the Fair Labor Standards Act ("FLSA"). The plaintiffs, employees of the government, alleged that the government's failure to pay overtime under the FLSA constituted a taking. In denying the claim, the Federal Circuit cited a long line of precedent that a statutory entitlement to a payment from the government is not cognizable property under the Takings Clause. *Adams*, 391 F.3d at 1219-25. The *Adams* plaintiffs maintained a peripheral claim that the government had taken their administrative claim against the GAO to recover their overtime compensation when it changed the statute of limitations from six to two years. The Federal Circuit rejected the argument on the obvious and narrow grounds that if an entitlement to overtime compensation is not a cognizable property interest, a contingent claim seeking payment of that entitlement cannot plausibly be cognizable property. *Id.* at 1226 (noting in dicta that Federal Circuit "precedent has limited the application of the Takings Clause to cases in which the cause of action protects a legally-recognized property interest").

The other Federal Circuit case relied upon by the government was *Rogers v. Tristar Prods., Inc.*, 559 Fed. App'x 1042 (Fed. Cir. 2012) (non-precedential) (cited by *Stauffer v. Brooks Bros. Grp.*, 758 F.3d 1314 (Fed. Cir. 2014)). The property interest at issue in *Rogers* was a qui tam claim brought under the Federal False Marking Statute. The statute allowed any person to file a lawsuit for a violation of the statute, typically an expired trademark. Generous awards to qui tam plaintiffs precipitated thousands of so-called bounty hunter lawsuits around the country. Rogers himself had filed four such lawsuits. In 2011, President Obama signed the America Invents Act ("AIA"), which eliminated the qui tam provisions of the statute. Rogers asserted that the AIA affected a taking of his claim against Tristar. But the underlying property at issue in *Rogers*—a qui tam claim enforcing a federal statute—did not belong to *Rogers* any

7

more than it did to any other citizen of this country. And the taking claim was denied on the grounds that the requisite property interest was lacking.

Under the awkward phrasing of *Adams* (neither cited nor adopted by *Rogers*), the "legally-recognized property interest" of a qui tam claim, to the extent one can even be identified, would be the statutory penalties for violation of the statute. *See Rogers,* 559 F. App'x at 1045 (describing qui tam actions as the government's partial assignment of its entitlement to damages for harm to the public). Critically, the plaintiffs in a qui tam claim have not suffered any injury, and are not seeking to redress harm to their person or property. The property in a qui tam claim belongs to the government not the qui tam plaintiff. And Judge Wheeler rightly rejected *Rogers* as "inapposite" (at *Aviation* at 365), as should this Court.

The tort claims here do not suffer from the infirmities of *Rogers* and *Adams*. *Aviation* at 366 ("[t]he Adams, Rogers, and Stauffer holdings all concern claims that were brought to protect federally created statutory rights, not state and common law recognized property interests such as land, contract, intangible property and personal injury") (citation omitted). Accordingly, Judge Wheeler held, as should this Court, that Federal Circuit precedent (*Alliance of Descendants* and *Abrahim-Youri*) compels a finding that a tort claim is a cognizable property interest under the takings clause. *Id.*

That the tort claims asserted by the *Aviation* plaintiffs passed to them as a result of a subrogated insurance contract cannot be material. Surely the insurance agreement lurking in the background cannot create a constitutionally-protected property interest in a tort claim where the initial holder of such a claim had none. Either the claim is property or it is not. As subrogees, the insurance companies, at most, stood in the shoes of the victims of Libyan terror. They certainly did not and could not inherit a stronger or greater property interest in the tort claims

8

than those who held the claims in the first place.  Such a holding would lead to a series of bizarre results.  For instance, an attorney who held an attorney's lien against the recovery of a tort claim would have a stronger property interest in the underlying tort claim than its actual owner.  That cannot be a reasonable reading of *Adams* or the Takings Clause.

## IV. JUSTICIABILITY:  THERE IS NO BASIS TO DISTINGUISH BETWEEN CLAIMS REFERRED AND CLAIMS NOT REFERRED TO THE COMMISSION

Judge Wheeler rejected the argument that the case presented a non-justiciable political question.  In dicta, however, he observed that "[i]f the Government had included them in the FCSC's jurisdiction, Plaintiffs may have been forced to accept reduced value for their claims, and any claim for a better deal would likely be non-justiciable."[4]  *Aviation* at 367.  Judge Wheeler's observation on justiciability (relying on *Shanghai Power* and *Belk v. United States*, 858 F.2d 706 (Fed. Cir. 1988)) is untenable in light of several Supreme Court and Federal Circuit decisions that have effectively overruled, to the extent they are even applicable, *Belk* and *Shanghai Power* (discussed at length in our *Prin. Opp.* at 30-31).

Moreover, the plaintiffs are not asserting that the U.S. could have struck a better or different deal with Libya.  The deal with Libya is immaterial.  The Alimanestianu plaintiffs held a valuable judgment against Libya that was seized and traded to promote the public good.  The U.S. paid some level of compensation to five of the nine Alimanestianu plaintiffs.  Each of the Alimanestianu plaintiffs, however, alleges that the compensation paid by the U.S. was not just.  The government cannot render a takings case non-justiciable by paying some (albeit, insufficient) compensation.

---

[4] Like the *Aviation* plaintiffs, four of the Alimanestianu Plaintiffs (*Prin. Opp.* at 9) were jurisdictionally barred from participating in the claims process set up by the State Department.  Five of the Alimanestianu plaintiffs, however, did receive compensation through the claims process set up by the State Department.  *Id.* at 10.

9

Judge Wheeler did not explain—he did not have to because the issue was not before him—why the payment of some compensation, particularly when the process set up by the government all but guaranteed unjust compensation, would render the dispute a non-justiciable political question. The State Department determined exactly how much it was going to pay each of the victims of Libyan terror. And the payments made through the commission process precisely tracked those determinations (compensation that we allege is inadequate, *i.e.*, not just). The Takings Clause requires just compensation. Adjudicating whether the government paid just compensation is a core judicial function that may not be avoided because the taking occurred in connection with foreign affairs:

> [A]scertainment of "just compensation" is a judicial function . . . the Constitution does not provide for a foreign affairs exception. That there should be a case of perhaps admitted government taking, that the courts could not touch with whatever precaution to maintain security, is a proposition we cannot accept.

*Langenegger v. United States*, 756 F.2d 1565, 1569 (Fed. Cir. 1985) (citations omitted).

Finally, in *Abrahim-Youri*, the Federal Circuit engaged in the exact inquiry that Judge Wheeler suggests might be non-justiciable. *Id.*, 139 F.3d at 1468 (holding on summary judgment that the compensation paid by the claims settlement process set up by the government was just— "[t]he Government provided an alternative tailored to the circumstances which produced a result as favorable to plaintiffs as could reasonably be expected").

Accordingly, under Federal Circuit and Supreme Court precedent, this lawsuit does not present a non-justiciable political question.

10

## V. BECAUSE THE UNITED STATES SEIZED AND COMPROMISED THE CLAIMS OF THE ALIMANESTIANU PLAINTIFFS, THE PENN CENTRAL FACTORS ARE IRRELEVANT; THE GOVERNMENT HAS A CATEGORICAL DUTY TO PAY JUST COMPENSATION

One important distinction between *Aviation* and *Alimanestianu* is that the nature of the alleged taking (the government action) is dramatically different. As noted above, the claims of the Alimanestianu plaintiffs were espoused (seized and compromised) when the government entered the CSA. The claims of the Aviation plaintiffs were not; the restoration of Libya's sovereign immunity merely precluded their litigation in the U.S.

The distinction is hardly trivial. The government's mere interference with the ability of the Aviation plaintiffs to prosecute their claims (precluding litigation in the U.S.) raises a factual question as to whether the interference even rises to the level of a taking. *Aviation* at 11 ("[the Penn Central] factors may ultimately be relevant in deciding whether a taking has occurred"). Here, to the contrary, the government's actual seizure of the claims of the Alimanestianu plaintiffs gives rise to a categorical duty to compensate.

Just this term (on June 22, 2015), the Supreme Court confirmed that the government's appropriation of property gives rise to a categorical duty to pay just compensation, regardless of property type, be it real or personal: "[t]he Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home. . . . ***It protects private property without any distinction between different types***." *Horne v. Dep't of Agric.*, __ U.S. ___, 135 S. Ct. 2419, 2426 (2015) (emphasis added). In reaching that conclusion, the Supreme Court rejected the argument that a categorical duty to compensate only arises when the government appropriation concerns real property. Writing for the majority, Chief Justice Roberts stated:

> [P]eople still do not expect their property, real or personal, to be actually occupied or taken away. Our cases have stressed the

11

> longstanding distinction between government acquisitions of
> property and regulations. The different treatment of real and
> personal property in a regulatory case suggested by *Lucas* did not
> alter the established rule of treating direct appropriations of real
> and personal property alike.

*Id.* at 2427-28 (citations and quotations omitted); *see also Prin. Opp.* at 15-17 (noting that in all the cases relied upon by the government, the court was really considering the regulation of a claim, not outright seizure).

A key takeaway from *Horne* is that personal property (not real property, *i.e.*, tangible and intangible property) may be regulated with little concern that such a regulation might run afoul of the Takings Clause. *Id.* at 2427 ("an owner of personal property ought to be aware of the possibility that new regulation might even render his property economically worthless"). But if that same property is acquired by the government, a taking has occurred and a categorical duty to compensate arises. *Id.* at 2425-27 (seizure of raisins gives rise to a categorical duty to compensate). *Horne*, thus, provides easy and straightforward grounds to distinguish between cases where the government has regulated or precluded a cause of action (by granting immunity or amending the statute of limitations) and cases where the government has actually seized and forced the transfer of a cause of action from a private citizen to the United States (all of the espousal cases). *See Prin. Opp.* at 15-17.

This distinction—that claims are cognizable property interests but a taking occurs only where there is an outright transfer to the government (*i.e.* espousal)—flows naturally from the Takings Clause, *Horne*, and jurisprudence around the country. It is a far cleaner and natural way to synthesize the body of takings jurisprudence than the vested/unvested approach suggested by the government and adopted by some of the sister-circuits. *Prin. Opp.* at 11-17.

That the preclusion of a forum might have the same practical impact as seizure is of little importance:

> [A] physical taking of raisins and a regulatory limit on production may have the same economic impact on a grower. The Constitution, however, is concerned with means as well as ends. The Government has broad powers, but the means it uses to achieve its ends must be consist[ent] with the letter and spirit of the Constitution.

*Horne*, 136 S.Ct. at 2428. Accordingly, the government's appropriation of the claims of the Alimanestianu plaintiffs gives rise to a categorical duty to compensate.

## CONCLUSION

For the reasons stated herein and in our principal opposition, the government's motion to dismiss should be denied.

Dated: New York, New York
July 30, 2015

        Respectfully submitted,

        BECKER, GLYNN, MUFFLY,
        CHASSIN & HOSINSKI LLP

By:    /s Zeb Landsman
     Zeb Landsman, Esq. (Attorney of Record)
     Richard N. Chassin, Esq.
     Jesse T. Conan, Esq.
299 Park Avenue
New York, New York 10171
*Attorneys for the Plaintiffs*

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify under penalty of perjury that on this 30th day of July 2015, a copy of the foregoing "**PLAINTIFFS' SUPPLEMENTAL BRIEFING ADDRESSING THE DECISION IN *AVIATION & GENERAL INSURANCE V. UNITED STATES*, NO. 14-687C**" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Zeb Landsman